NON-COMPLIANCE OF S.D. fla. L.R. 5 (H)(1)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA )          CASE NO. 00-6167-CR-DIMITROULEAS

                           )          MAGISTRATE JUDGE SNOW

                           )

JAMES F. STAHL                          )
_____/

**DEFENDANT, JAMES F. STAHL'S, WAIVER OF PRESENTENCE INVESTIGATION**
**AND MOTION FOR IMPOSITION OF AGREED RECOMMENDATION OF SPLIT**
**SENTENCE AND SPECIAL ASSESSMENT, PURSUANT TO THE FILED PLEA**
**AGREEMENT AND USSG, §§ 5C1.1.(c)(3) AND (e)(3).**

The Defendant, JAMES F. STAHL, by and through undersigned counsel, respectfully requests that this sentencing Court approve the recommendations agreed to by the United States Government in this case, and in support thereof would state the following:

RELEVANT SENTENCING INFORMATION

1.    On or about June 4, 1998, after a lengthy government criminal investigation into the referred corporate bankruptcy matter, undersigned counsel volunteered, prepared, and presented to the Government a detailed written proffer of evidentiary testimony available from the Defendant, James F. Stahl.    A true and correct copy of the written proffer of his testimony is attached hereto and incorporated herein as DEFENDANT'S EXHIBIT 1, for the Court's consideration in this matter.

2.    Subsequent to the written proffer, the Government fully debriefed Mr. Stahl on December 8, 1998 and February 5, 1999; under separate letters of immunity; concerning his knowledge of the alleged criminal activities under investigation.    True and correct copies of the two (2) immunity letters are attached hereto and

1



Case No. 00-6167-CR-DIMITROULEAS

incorporated herein as DEFENDANT'S EXHIBIT 2, for the Court's consideration in this matter.

3.    Additionally, undersigned counsel provided corroborating documents to the Government to assist them in a full investigation of this matter. A true and correct copy of a December 28, 1998 letter to the assigned investigating special agent of the Internal Revenue Service is attached hereto and incorporated herein as DEFENDANT'S EXHIBIT 3, for the Court's consideration in this matter.

4.    On or about February 7, 1999, the Government proposed the one (1) count information and Plea Agreement which has been filed in this matter. Mr. Stahl executed and returned his approval of the Plea Agreement on May 11, 1999, **pending** the final settlement with the bankruptcy Trustee. A true and correct copy of a letter from undersigned counsel to the Government approving the Plea Agreement is attached hereto and incorporated herein as DEFENDANT'S EXHIBIT 4, for the Court's consideration in this matter.

5.    On November 23, 1999, U.S. Bankruptcy Judge Raymond B. Ray entered the ORDER APPROVING COMPROMISE OF CONTROVERSY BETWEEN TRUSTEE WELT AND THE STAHL DEFENDANTS AND NANCY DESANTIS in the referred bankruptcy case.    The ORDER accurately recites the provisions of the Settlement Agreement executed by the parties in that case, and specifies that the parties understand that should the Trustee discover, within two (2) years from the date of the

2

Case No. 00-6167-CR-DIMITROULEAS

ORDER, that any of the financial affidavits attached (including the financial affidavit of James F. Stahl) are materially inaccurate, then the Trustee shall be entitled to the entry of a judgment in the amount of $500,000.00 against the offending party. A true and correct copy of said ORDER is attached hereto and incorporated herein as DEFENDANT'S EXHIBIT 5, for the Court's consideration in this matter.

## WAIVER OF PRESENTENCE INVESTIGATION AND REPORT

6.   James F. Stahl has no prior criminal history and the Government is fully aware of all facts pertinent to the sentencing process, including all relevant personal, civic, and professional background information concerning Mr. Stahl.   Accordingly, Mr. Stahl has recently waived indictment in this matter, reaffirmed his agreement to the terms proposed by the Government in the filed Plea Agreement, and herein **waives** the preparation of a presentence investigation and report, as authorized under Fed. R. Crim. P. 32(b), prior to his sentencing by this Court.

7.   Mr. Stahl understands and agrees that the Court may impose any sentence authorized by law, including a statutory maximum term of imprisonment of three (3) years, a period of supervised release and a fine of $100,000.00.   Mr. Stahl also understands that he may not withdraw his plea solely as a result of the sentence imposed.

3

Case No. 00-6167-CR-DIMITROULEAS

## AGREED RECOMMENDATIONS

8.    Under the terms of the Plea Agreement filed in this matter, the United States has agreed to the imposition of sentence in conformity with the <u>United States Sentencing Commission Guidelines Manual</u> (USSG). Pursuant to USSG §2T1.1.(a)(1), the offense level for this matter is determined from application of USSG §2T4.1.(G). In this case, the initial offense level is **12**. The Government further agreed to recommend a reduction by two (2) levels, based upon Mr. Stahl's recognition and affirmative acceptance of personal responsibility, pursuant to USSG §3E1.1.(a). The agreed recommendation, therefore, reduces the offense level to **10**, placing Mr. Stahl's sentencing range within ZONE B of the federal Sentencing Tables.    Granting the Government's reduction recommendation, this Court may impose a sentence of imprisonment ranging from 6 to 12 months.

9.    The Government also agreed to recommend a sentence at the low end of the applicable guideline range, and further agreed to a split sentence, if applicable. Undersigned counsel submits that in this case USSG §6B1.2.(b)(1) authorizes this Court's acceptance of the filed Plea Agreement, and that sufficient factors exist that warrant reduction of JAMES F. STAHL's sentence to a substituted punishment term and that a split sentence is applicable.    Defense counsel has conferred with the Government concerning the issues of sentencing as contained in this Motion and they have no objection to the proposed substituted punishment.

4

Case No. 00-6167-CR-DIMITROULEAS

## GUIDELINES

10.  Pursuant to USSG §§ 5C1.1.(c)(3) and (e)(3), a minimum term of imprisonment may be satisfied by a sentence of probation that includes substitute punishments for confinement, including one day of home detention for one day of imprisonment.  A probation term is authorized pursuant to 18 USCA § 3561(c)(1) and USSG §5C1.1., comment. [n.3(B)].

WHEREFORE, JAMES F. STAHL respectfully requests that this Honorable Court:

A.  Find that the information provided in the record enables the Court to exercise its sentencing authority meaningfully pursuant to 18 USCA § 3553;

B.  Accept the agreed sentencing recommendations of the Government, as contained within the terms of the Plea Agreement entered in this matter; and,

C.  Impose a sentence which includes a minimum term of the applicable guideline range in ZONE B of the federal Sentencing Table, to be satisfied by substitute punishment of **one (1) year term of probation to include six (6) months of home detention, supervised by federal probation authorities, pursuant to USSG §5F1.2, and the payment of the agreed special assessment in the amount of $100.00.**

Respectfully submitted this __/___ day of July, 2000 by:

> **L. Daniel Ferrer, Esq.**
> Of Counsel
> LYONS and FARRAR, P.A.
> Attorney for Defendant

5

Case No. 00-6167-CR-DIMITROULEAS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing WAIVER OF PRESENTENCE INVESTIGATION AND REPORT and MOTION FOR IMPOSITION OF AGREED RECOMMENDATION OF SPLIT SENTENCE was sent via telefacsimile and U.S. Mail to: AUSA Laurence M. Bardfeld, Esq., at (954) 356-7336 and 500 East Broward Blvd., Suite 700, Ft. Lauderdale, FL 33394, on this ___ day of July, 2000.

**L. Daniel Ferrer, Esq.**
**Fla. Bar No. 739510**
**Of Counsel**
**LYONS and FARRAR, P.A.**
**201 Alhambra Circle, Suite 711**
**Coral Gables, FL 33134-5108**
**(305) 567-1720**

6

### MEMORANDUM
### PRIVILEGE COMMUNICATION

TO:     AUSA Lawrence Bardfeld
FROM:   L. Daniel Ferrer, Esq.
DATE:   June 4, 1998

RE:  Proffer of Testimony by James Stahl (FGJ 97-02)
     Our File No. 7040-1

#### George Osserman/Stuart Hoffman:

Barney Osserman had been a Stahl client since 1990 or 1991. In late 1993 or early 1994, Barney introduced George Osserman, to Jim who was told that George had recently been released from prison. Jim did not pursue any details. After the introduction, George began to visit Jim regularly, have lunch occasionally, and discuss tax shelters and financing deals from his past. Conversations were amusing, but never serious.

Once George became comfortable, he introduced Jim to Stuart Hoffman, who was described as George's longtime "business partner". The visits to Jim's office became more frequent and went on for months. Late in 1994, George informed Jim of a pending North Carolina litigation involving several former business entities from the early 1980's in which a favorable multi-million dollar settlement was anticipated.

George determined that as a result of several prior civil and tax judgments against him, neither he nor Zan Galloway (George's paramour) could legally accept the anticipated monies. George's solution, as described to Jim, was to form a not-for-profit foundation with an outside, unrelated third party, which could then be the assigned recipient of any interests, including monies, received from the North Carolina litigation.

DEFENDANT'S
EXHIBIT

Jim was told that Barney Osserman was an HIV carrier, apparently due to his prior drug abuse, and that he had spent a great deal of time and money on alternative medical treatments trying to stay alive. George became interested in the alternative medicine approach, and along with Zan and Stuart Hoffman, were determined to open a chelation clinic, a halfway house, or some other type of facility to assist others with similar infirmities. Jim was impressed by their collective resolve to create a worthy cause from the possible money judgement in North Carolina.

George approached Jim to formally set up the not-for-profit corporation and application for 501C3 status, to be called "The Foundation for Recovery". Jim agreed to do so, set up the corporation and, as agreed with by George Osserman and Zan Galloway, contacted attorney  Trawick Stubbs in North Carolina to file appropriate pleadings to qualify the Foundation for Recovery as the sole assigned legal beneficiary of any interests held by George or Zan in the pending litigation. Jim never made any separate arrangement with George or Zan or Stuart Hoffman to use any funds, if collected, for any purpose other than the treatment centers or for promotion of The Foundation for Recovery.

## GLOBAL HEALTH & WELLNESS, INC.:

July-August of 1995, during the pending North Carolina proceedings, George and Stuart told Jim that they had "acquired" an herbal formula which supposedly  could help people stop smoking.

2

"Quick Quitz" was initially a product to be bought and sold through The Foundation. Stuart Hoffman then introduced Jim to David Ploetze, who was described as a multi-level sales "guru". In September of 1995, within weeks of Ploetzes' involvement, "Quick Quitz" was being marketed and sold nationwide. Distributors were contacted and invited to a meeting in Fort Lauderdale. Jim was asked to attend the meeting by George Osserman. In an effort to promote the product, and without Jim's prior knowledge or approval, George, Stuart and Ploetze had printed promotional brochures of a corporation called "Global Health & Wellness, Inc." The brochures included a glowing personal and civic background of Jim, introducing him as the Chairman and CFO of The Foundation for Recovery, the not-for-profit corporation set up to receive all future profits of sales. The marketers meeting was attended by almost 100 distributors, all of whom were eager to expand to multi-level sales.

George and Stuart, or someone under their direction, forged Jim's signature on an office lease for Global Health & Wellness, and used Jim's name to secure telephone lines and credit within the Delray Beach community. Despite these transgressions, Jim agreed to formally incorporate. Global Health and Wellness to separate the marketing and sales of products, including the Quick Quitz formula held by The Foundation for Recovery. Jim began visiting the offices at Global and became impressed with the enormous success of the sales of Quick Quitz. George, Stuart, Zan Galloway, and Lynn Hoffman eventually asked Jim to begin handling the financial

3

affairs of Global. Jim agreed to do so, and was determined to keep The Foundation's interest separate.

During the short life-span of Global, George and Stuart attempted to designate 41% of the gross sales of product attributable to The Foundation and 59% into Global for distribution of commissions and expenses of operations. Jim convinced them that that would not work, for IRS and corporate reporting, and instead decided to initially merge all financial records from The Foundation with Global for accurate reporting on the initial corporate returns. The early closing of Global prevented this procedure.

Jim made it clear to both George and Stuart that it was his intent through Stahl and Associates, to disclose all payments, distributions, payroll and expenses of both The Foundation and Global in the accounting records as well as future corporate filings and tax returns. Reconciliation of those records has been impossible since the takeover of the corporate records by the bankruptcy trustee. It is suspected that the involuntary bankruptcy proceeding brought by Zan Galloway was intended to prevent such reporting.

4

DISCLOSURES:

During the deposition testimony given on May 30, 1996 to the bankruptcy trustee's attorney, Jim could not accurately recall financial records and payments received or made, but did make definitive misstatements concerning his personal, and his wife's corporate, remunerations.

Jim responded repeatedly to questions about salary and expenses paid to him in 1995 by Global. The $13,000 figure he disclosed was the approximate total of consulting payments made directly to Jim by either The Foundation or Global, prior to his filing for personal bankruptcy on November 28, 1995. Jim also disclosed that he believed that the total payments from The Foundation and Global to Stahl and Associates was probably between $80,000.00 to $100,000.00. These responses were given without benefit of reviewing any corporate records, which were by then in the possession of the trustee.

It should be noted that Jim did disclose his employment status on Schedule I of his personal bankruptcy filings ("unemployed consultant") as well as his corporate status in Global as a director, secretary and treasurer. However, the preparer of the filing failed to disclose payments prior to filing as income.

### Randee Golder, Esq.

Jim has known Ms. Golder for a number of years, mostly through Delray Beach civic and social functions. Clients would seek bankruptcy advise and Jim referred them to Ms. Golder. In 1994,

George Osserman inquired about finding a good, aggressive Jewish lawyer. Jim referred George to Ms. Golden. Eventually, George retained Ms. Golder as Global's corporate attorney at a $5,000.00 per month retainer.

It was during that time period that Jim sought legal advise from Ms. Golder concerning his personal debts and bankruptcy filings. Ms. Golder counseled Jim to file personal bankruptcy to relieve his wife from creditor demands and to clear his credit standing for the anticipated financial success of Global sales. Ms. Golder, while Global's corporate attorney and having access to Global's financial records, prepared the filings and schedules for Jim's personal bankruptcy and later advised him to answer any questions posed to him about his personal income based upon the date of filing, November 29, 1995. Jim followed her advise.

In September of 1996, during the reopening of Jim's bankruptcy, attorney Robert Furr on behalf of Global's creditors, again deposed Jim. Jim contacted Ms. Golden for her advise prior to attending another deposition. Ms. Golden refused to assist Jim, withdrawing as his attorney and citing a conflict of interest, since she was then retained by George Osserman and Global.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

*Laurence M. Bardfeld*
*Assistant United States Attorney*

*Central Region*
*500 East Broward Boulevard, # 700*
*Fort Lauderdale, Florida 33394*
*Telephone: (954) 356-7255*
*Facsimile: (954) 356-7228*

December 8, 1998

L. Daniel Ferrer, Esquire
Lyons & Farrar
201 Alahambra Circle
Suite 711
Coral Gables, FL 33134

Re:    James Stahl

Dear Mr. Ferrer:

You have advised that your client, James Stahl, is interested in providing this office with information concerning possible violations of federal law by himself and others. In order to assure that there are no misunderstandings concerning the debriefing of your client, this letter sets forth the terms of the debriefing.

Your client agrees to be fully debriefed, that is, to provide information concerning his knowledge of, and participation in, all criminal activities including, but not limited to, the fraud and money laundering offenses that are under investigation by this officet. This debriefing will be conducted during the week beginning December 7, 1998, by this office, agents of the IRS, FDA, and any other law enforcement agencies this office may require.

No information disclosed by your client during the debriefing will be offered in evidence against your client in any criminal or civil proceeding, provided that the information he furnishes is truthful, complete and accurate. If this office determines, however, that your client has intentionally given materially false, incomplete, inaccurate or misleading information, or has otherwise violated any provision of this agreement, then your client is subject to prosecution for any and all criminal violations known to the government including, but not limited to, perjury, obstruction of justice and making false statements to government agencies. Any such prosecution may be based upon information provided by your client during the course of his debriefing and such information, including his statements, will be



admissible against your client in any grand jury or court proceeding.

The government may make derivative use of any statements or information provided by your client during the debriefing. The government may also pursue any investigative leads suggested by statements or information provided by your client during the debriefing. Any evidence gathered by the government as a result of the debriefing may be used against your client and other persons. This provision is necessary in order to eliminate the necessity for a hearing under the provisions of Kastigar v. United States, 406 U.S. 441 (1972), at which the government would have to prove that the evidence it would use at trial is not tainted by any statements or information provided by your client during the debriefing.

If your client testifies as a defendant or as a witness at any proceeding, and offers testimony or evidence materially different from any statements or information he provides during the debriefing, the government may cross-examine your client concerning the statements and information he provided during the debriefing. This provision is necessary in order to ensure that your client does not make materially false statements to a government agency or commit perjury during any testimony.

No additional promises, agreements or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by all parties.

The intended object of the debriefing is to provide the government an opportunity to evaluate the information your client is able to provide. Based upon the information provided by your client, the government will make a determination concerning what action to take concerning the prosecution of your client.

If your client wishes to engage in a discussion pursuant to the guidelines set forth in this letter, you and your client should sign this letter and return it to me. You may wish to retain a copy of this letter for your client and for your files.

Sincerely,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

BY:

LAURENCE M. BARDFELD
ASSISTANT UNITED STATES ATTORNEY

2

## ACKNOWLEDGMENT

I have read this letter and have discussed it fully with my attorney. I understand and agree to the terms set forth in this letter. This letter fully and accurately sets forth my agreement with the Office of the United States Attorney for the Southern District of Florida. There have been no additional promises or representations made to me by any officials or law enforcement authorities of the United States in connection with this matter. I have signed this agreement knowingly, intelligently, freely and voluntarily because I believe it is in my best interest to do so.

_12-8-78_
Date

_____
James Stahl

I represent James Stahl as his legal counsel. I have discussed this letter with my client, and to the best of my knowledge, he understands this letter and agrees to the terms set forth in this letter.

_12/8/98_
Date

_____
L. Daniel Ferrer, Esquire

3

The government may make derivative use of any statements or information provided by your client during the debriefing. The government may also pursue any investigative leads suggested by statements or information provided by your client during the debriefing. Any evidence gathered by the government as a result of the debriefing may be used against your client and other persons. This provision is necessary in order to eliminate the necessity for a hearing under the provisions of <u>Kastigar</u> v. <u>United States</u>, 406 U.S. 441 (1972), at which the government would have to prove that the evidence it would use at trial is not tainted by any statements or information provided by your client during the debriefing.

If your client testifies as a defendant or as a witness at any proceeding, and offers testimony or evidence materially different from any statements or information he provides during the debriefing, the government may cross-examine your client concerning the statements and information he provided during the debriefing. This provision is necessary in order to ensure that your client does not make materially false statements to a government agency or commit perjury during any testimony.

No additional promises, agreements or conditions have been entered into other than those set forth in this letter, and none will be entered into unless in writing and signed by all parties.

The intended object of the debriefing is to provide the government an opportunity to evaluate the information your client is able to provide. Based upon the information provided by your client, the government will make a determination concerning what action to take concerning the prosecution of your client.

If your client wishes to engage in a discussion pursuant to the guidelines set forth in this letter, you and your client should sign this letter and return it to me. You may wish to retain a copy of this letter for your client and for your files.

Sincerely,

THOMAS E. SCOTT
UNITED STATES ATTORNEY

BY:

LAURENCE M. BARDFELD
ASSISTANT UNITED STATES ATTORNEY



*United States Attorney*
*Southern District of Florida*

*500 East Broward Boulevard, Suite 700*
*Fort Lauderdale, Florida 33394*
*Tel: (954) 356-7255*
*Fax:(954) 356-7336*

February 5, 1999

L. Daniel Ferrer, Esquire
Lyons & Farrar
201 Alahambra Circle
Suite 711
Coral Gables, FL 33134

        Re:    James Stahl

Dear Mr. Ferrer:

You have advised that your client, James Stahl, is interested in providing this office with information concerning possible violations of federal law by himself and others. In order to assure that there are no misunderstandings concerning the debriefing of your client, this letter sets forth the terms of the debriefing.

Your client agrees to be fully debriefed, that is, to provide information concerning his knowledge of, and participation in, all criminal activities including, but not limited to, the fraud and money laundering offenses that are under investigation by this office. This debriefing will be conducted during the week of February 8, 1999, by this office, agents of the IRS, FDA, and any other law enforcement agencies this office may require.

No information disclosed by your client during the debriefing will be offered in evidence against your client in any criminal or civil proceeding, provided that the information he furnishes is truthful, complete and accurate. If this office determines, however, that your client has intentionally given materially false, incomplete, inaccurate or misleading information, or has otherwise violated any provision of this agreement, then your client is subject to prosecution for any and all criminal violations known to the government including, but not limited to, perjury, obstruction of justice and making false statements to government agencies. Any such prosecution may be based upon information provided by your client during the course of his debriefing and such information, including his statements, will be admissible against your client in any grand jury or court proceeding.

## ACKNOWLEDGMENT

I have read this letter and have discussed it fully with my attorney. I understand and agree to the terms set forth in this letter. This letter fully and accurately sets forth my agreement with the Office of the United States Attorney for the Southern District of Florida. There have been no additional promises or representations made to me by any officials or law enforcement authorities of the United States in connection with this matter. I have signed this agreement knowingly, intelligently, freely and voluntarily because I believe it is in my best interest to do so.

_2/8/99_
Date

James Stahl

I represent James Stahl as his legal counsel. I have discussed this letter with my client, and to the best of my knowledge, he understands this letter and agrees to the terms set forth in this letter.

_02/08/99_
Date

L. Daniel Ferrer, Esquire

LAW OFFICES
## LYONS AND FARRAR, P.A.
SUITE 711
201 ALHAMBRA CIRCLE
CORAL GABLES, FLORIDA 33134-5108
TELEPHONE (305) 567-1720
TELECOPIER (305) 567-2757

☒ REPLY TO CORAL GABLES OFFICE

CHARLES O. FARRAR, JR.
DOUGLAS S. LYONS, P.A.
MARSHA L. LYONS

OF COUNSEL
L. DANIEL FERRER

325 NORTH CALHOUN STREET
TALLAHASSEE, FLORIDA 32301

TELEPHONE (904) 222-8811
TELECOPIER (904) 222-5583

December 28, 1998

Mr. Darryl Hudgins, Special Agent
Dept. of The Treasury
Internal Revenue Service
Criminal Investigation Division
7771 W. Oakland Park Blvd. Suite 231
Sunrise, FL    33351

RE:   Documents for Review; FGJ 97-02

Dear Agent Hudgins:

As promised, I enclose copies of the 1996 federal tax filings of James F. Stahl and Cynthia M. Stahl, as well as a copy of the transcript of the September 11, 1998 deposition of John E. Morris, III of Barnett Bank.

In relation to your ongoing investigation of other subjects or targest, I have compiled highlighted copies of some other documents which may prove helpful to your office, which we believe corroborate statements previously given to you by James Stahl.

Please review these documents and if you have any questions give my office a call prior to the scheduled debriefing of January 8, 1999.

Thanks,

L. Daniel Ferrer, Esq.

LDF/gm
enclosures

cc: Harold Moorefield, Esq.


DEFENDANT'S EXHIBIT

**LYONS** AND **FARRAR**, **P.A.**

SUITE 711
201 ALHAMBRA CIRCLE
CORAL GABLES, FLORIDA 33134-5108
TELEPHONE (305) 567-1720
TELECOPIER (305) 567-2757

□ PLEASE REPLY TO CORAL GABLES OFFICE

CHARLES C. FARRAR, JR.
DOUGLAS S. LYONS
MARSHA L. LYONS

- - - - - - -

OF COUNSEL
L. DANIEL FERRER

325 N. CALHOUN STREET
TALLAHASSEE, FL 32301
TELEPHONE (904) 222-8811
FAX (904) 222-8853

May 11, 1999

Lawrence Bardfeld, AUSA
500 East Broward Blvd.
Suite 700
Fort Lauderdale, FL    33940

> RE:    **Global Health & Wellness**
>        **U.S. adv. STAHL, FILE NO. 7040-1.**

Dear Larry:

Enclosed please find a copy of the executed Plea Agreement you have presented in the above-referenced matter. I have expedited returning a copy to you and Special Agent Hudgins, so that further delay in closing this matter is avoided.

As I explained at our last meeting, once we have finalized our compromise settlement with the bankruptcy trustee; which will include appropriate financial disclosures and severe penalties for post-agreement discovery of assets; we shall forward copies to your office for inclusion in the recommendation for acceptance of the proposed Plea Agreement.

Please call me if you have any other questions or concerns, and again, I thank you for your personal and professional attention to this matter.

Very truly yours,

L. Daniel Ferrer, Esq.

LDF/gm
cc:    client
       Harold Moorefield, Esq.
a:\stahl\barfeld.511



UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION

In re:

**GLOBAL HEALTH & WELLNESS, INC.**          CASE NO. 96-21751-BKC-RBR
Employer I.D. No. 65-0607005

Debtor.                                     Chapter 7
_____/

## ORDER APPROVING
## COMPROMISE OF CONTROVERSY BETWEEN TRUSTEE WELT
## AND THE STAHL DEFENDANTS AND NANCY DESANTIS

THIS CAUSE came before the Court for hearing on November 23, 1999, upon the

*Joint Motion for Order Approving Compromise of Controversy Between Trustee Welt and*

*the Stahl Defendants and Nancy DeSantis* (the "Motion") filed jointly by KENNETH A.

WELT ("Trustee Welt"), Chapter 7 Trustee of the bankruptcy estate of GLOBAL HEALTH

& WELLNESS, INC. ("Global" or "Debtor"), together with NANCY DESANTIS ("DeSantis")

and JAMES F. STAHL, CYNTHIA M. STAHL, CYNTHIA STAHL AND ASSOCIATES, P.A.,

STAHL AND ASSOCIATES, P.A., f/k/a James F. Stahl, CTP, P.A., ARRAYA

CORPORATION, NATURE'S MAGIC, INC., AND GLOBAL HEALTH & WELLNESS OF

NORTH AMERICA, INC. (collectively, the "Stahl Defendants").

The Motion seeks approval of a compromise and settlement ("Settlement") among

Trustee Welt, DeSantis, and the Stahl Defendants, which resolves all of the disputes

between the parties, including all claims made in Adversary No. 97-0675-BKC-RBR-A (the

"Adversary Proceeding").

After reviewing the Motion, considering the agreement between the parties, and

noting that no party filed an objection to the Motion, the Court finds that the Settlement is

in the best interests of the Debtor's estate and its creditors, good and sufficient notice has

DEFENDANT'S
EXHIBIT

been provided to all interested parties, and good cause exists for granting the Motion. Accordingly, it is hereby -

ORDERED AND ADJUDGED as follows:

1. The *Joint Motion for Order Approving Compromise of Controversy Between Trustee Welt and the Stahl Defendants and Nancy DeSantis* is hereby GRANTED in its entirety.

2. The provisions of the parties' Settlement set forth in the Motion and the Settlement Agreement attached as *Exhibit A* to the Motion are incorporated as part of this Order.

3. The funds presently held in escrow which were paid pursuant to the Settlement in the amount of Seventy Thousand Dollars ($70,000.00) from the Stahl Defendants and Five Thousand Dollars ($5,000.00) from DeSantis, for a total of Seventy-Five Thousand Dollars ($75,000.00), shall be paid immediately to Trustee Welt for the benefit of the creditors of Global's bankruptcy estate.

4. If within two years from the date of this Order, Trustee Welt discovers that any of the Financial Affidavits attached to the Motion are "materially" inaccurate, then Trustee Welt shall be entitled to the entry of a judgment in the amount of $500,000.00, less any sums paid under the Settlement Agreement, against the Defendant who submitted the inaccurate Affidavit. "Materially" means the discovery of assets having a net equity value in excess of Ten Thousand Dollars ($10,000.00).

5. If Trustee Welt discovers any material inaccuracy in a Financial Affidavit, any defenses thereto of the Defendant who made the inaccurate Financial Affidavit shall be deemed fully waived and denied; and upon the filing of an Affidavit by Trustee Welt

attesting to such material inaccuracy, the Court shall enter a judgment in the sum provided by the Settlement, without further notice or hearing.

6.    The Stahl Defendants and DeSantis may allocate, in their sole discretion, the Settlement proceeds to any claim raised by Trustee Welt in the Adversary Proceeding.

7.    Any and all claims the Stahl Defendants and DeSantis have made, or could have made, against Trustee Welt or Global's bankruptcy estate, whether filed or not filed, are deemed withdrawn and denied and are stricken and barred in their entirety.

8.    Any and all claims, excepting only claims resulting from any material inaccuracies in the Financial Affidavits as defined in paragraph 4 above, that Trustee Welt may have against the Stahl Defendants and DeSantis are deemed fully waived and relinquished and are stricken and barred in their entirety.

9.    Pursuant to the Settlement, the parties shall execute mutual releases and the Adversary Proceeding shall be deemed voluntarily dismissed with each party to bear its own attorneys' fees and costs.

10.   This Court shall retain jurisdiction to enforce and effectuate the terms of this Order and the Settlement.

NOV 2 3 1999

ORDERED in the Southern District on _____.

# RAYMOND B. RAY

RAYMOND B. RAY
United States Bankruptcy Judge

Copy furnished to:
Harold D. Moorefield, Jr., Esq.
Stearns Weaver Miller Weissler, et al.
Counsel for Trustee Welt
150 West Flagler Street, Suite 2200
Miami, Florida 33130

(Attorney Harold D. Moorefield, Jr. is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of same and to file a Certificate of Service.)

G:\W-BANK\34621\0011O-comp.sta

- 3 -